UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STEPHEN LAWRENCE FLOYD,

        Petitioner,

v.

        Case No. 13-10050

        HON. AVERN COHN

CARMEN D. PALMER,

        Respondent.

_____/

**MEMORANDUM AND ORDER
DENYING THE PETITION FOR WRIT OF HABEAS CORPUS
AND
DENYING A CERTIFICATE OF APPEALABILITY,**

**I. Introduction**

This is a pro se habeas case under 28 U.S.C. § 2254. Petitioner Stephen Lawrence Floyd ("Petitioner") was convicted by a jury of four counts of criminal sexual conduct in the first degree and is serving a sentence of twenty to forty years in prison. In broad terms, Petitioner claims that his trial attorney was ineffective and that his sentence was increased on the basis of facts that he did not admit and that were not proved to a jury. Respondent Carmen D. Palmer ("Respondent") says that Petitioner's claims lack merit or are not cognizable on habeas review. The Court agrees with Respondent. As such, the petition will be denied. The reasons follow.

1

## II. Background

### A.

The charges against Petitioner arose from allegations that Petitioner sexually penetrated his wife's underage niece while the niece and her mother were living with Petitioner and his wife. The Michigan Court of Appeals provided the following brief summary of the facts adduced at trial:

> This case presented the jury with a clear credibility contest between the victim and defendant's witnesses. The victim testified that she was—at the time of the events at issue—a 15–year–old member of defendant's household. She further described how defendant repeatedly sexually penetrated her over a period of time. In contrast, defendant's wife testified that the victim did not live in the household until she was 16. Additionally, defendant's trial counsel presented other witnesses who testified that the victim had a reputation for untruthfulness, while the victim and the victim's mother denied that the victim had a reputation for untruthfulness.

People v. Floyd, No. 297393, 2011 WL 4375096, at *3 (Mich. Ct. App. Sept. 20, 2011).

As noted above, Petitioner was found Petitioner guilty of four counts of first-degree criminal sexual conduct. See Mich. Comp. Laws § 750.520b(1)(b)(i) (sexual penetration with a person who is at least thirteen years old, but less than sixteen years old, and a member of the same household). He was later sentenced to four concurrent terms of twenty to forty years in prison and lifetime monitoring with an electronic tether.

### B.

Petitioner filed an appeal of right, raising the following claims: (1) he was denied effective assistance of trial counsel, (2) the guilty verdict was against the great weight of the evidence and violated his constitutional right to due process of law, (3) the sentencing guidelines were mis-scored, and his sentence was increased on the basis of

facts that he did not admit and that were not proved to a jury beyond a reasonable doubt; and (4) the trial court erred when it imposed lifetime electronic monitoring. The Michigan Court of Appeals affirmed Petitioner's convictions, but remanded the case for correction of the judgment of sentence to reflect that there was no lifetime electronic monitoring. See Floyd, 2011 WL 4375096, at *1 and *6 - *7. The Michigan Supreme Court denied leave to appeal because it was not persuaded to review the questions presented to it. See People v. Floyd, 491 Mich. 886 (2012) (table).

Petitioner then filed the present habeas petition. He asserts the following claims: (1) he was denied effective assistance of trial counsel; (2) the jury's verdict was against the great weight of the evidence and violated his right to due process; (3) his sentencing guidelines were improperly scored; and (4) the trial court erred when it imposed lifetime monitoring with a tether, and (5) his sentence was increased on the basis of facts that he did not admit and that were not proved to a jury beyond a reasonable doubt.

### III.  Standard of Review

28 U.S.C. § 2254(d) provides:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.' " Mitchell v. Esparza, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting Williams v. Taylor, 529 U.S. 362, 405-06 (2000)). "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts' of petitioner's case." Wiggins v. Smith, 539 U.S. 510, 520 (2003) (quoting Williams, 529 U.S. at 413).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). Accordingly,

> [w]hen reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong. Federal habeas review thus exists as "a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." Harrington, supra, at 102–103, 131 S.Ct. 770 (internal quotation marks omitted). This is especially true for claims of ineffective assistance of counsel, where AEDPA review must be " ' "doubly deferential" ' " in order to afford "both the state court and the defense attorney the benefit of the doubt." Burt v. Titlow, 571 U.S. ——, ———, 134 S.Ct. 10, 13, 187 L.Ed.2d 348 (2013) (quoting Cullen v. Pinholster, 563 U.S. 170, ——, 131 S.Ct. 1388, 1403, 179 L.Ed.2d 557 (2011)).

Woods v. Donald, 135 S. Ct. 1372, 1376 (2015) (per curiam). "As a condition for

4

obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington, 562 U.S. at 103.

In simple terms, the Supreme Court has said that the standard of review is "difficult to meet" and is a "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." Cullen v. Pinholster, 131 S. Ct. 1388, 1398 (2011) (quoting Harrington, 562 U.S. at 102, and Woodford v. Visciotti, 537 U.S. 19, 24 (2002) (per curiam)). The Supreme Court has further said that a federal court must guard against "using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." Renico v. Lett, 559 U.S. 766, 779 (2010).

Finally, a federal habeas court must presume the correctness of state court factual determinations. See 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption only with clear and convincing evidence. Warren v. Smith, 161 F.3d 358, 360-61 (6th Cir. 1998).

## IV. Petitioner's Claims

### A. Ineffective Assistance of Trial Counsel

Petitioner claims that he was denied effective assistance of trial counsel because his attorney: (1) failed to interview potential witnesses who could have testified that the complainant was not residing in his residence when the alleged crimes occurred; (2) failed to bring an updated police report to court to impeach the complainant regarding

the dates of the crimes; (3) failed to bring Petitioner's medical records to court to show that he could not have restrained the complainant; (4) advised him not to testify on the basis of a twenty-year-old conviction; and (5) failed to put forth a viable defense or make use of an expert witness. The Michigan Court of Appeals thoroughly considered all of Petitioner's allegations of ineffective assistance and found them all lacking in merit, as will be further explained below. The Court of Appeals also rejected Petitioner's claim that Petitioner was denied a fair trial due to the cumulative effect of counsel's errors.

### 1. Clearly Established Federal Law

The Supreme Court's decision in Strickland v. Washington, 466 U.S. 668 (1984), is clearly established federal law for purposes of Petitioner's ineffective-assistance-of-counsel claims. Pinholster, 131 S. Ct. at 1403. Under Strickland, a defendant must show that his trial attorney's "performance was deficient" and "that the deficient performance prejudiced the defense." Strickland, 466 U.S. at 687. "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." Id.

The "deficient performance" prong of the Strickland test "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. "Judicial scrutiny of counsel's performance must be highly deferential." Id. at 689.

> A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong

>   presumption that counsel's conduct falls within the wide range of
>   reasonable professional assistance ; that is, the defendant must overcome
>   the presumption that, under the circumstances, the challenged action
>   "might be considered sound trial strategy."  There are countless ways to
>   provide effective assistance in any given case.  Even the best criminal
>   defense attorneys would not defend a particular client in the same way.

Id. (internal citation omitted).

To demonstrate that counsel's performance prejudiced the defense, Petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.  "This does not require a showing that counsel's actions 'more likely than not altered the outcome,' " but "[t]he likelihood of a different result must be substantial, not just conceivable." Harrington, 562 U.S. at 111-12 (quoting Strickland, 466 U.S. at 693).

### 2. Failure to Interview Potential Witnesses

Trial counsel called Petitioner's wife, mother-in-law, and nephew as witnesses in Petitioner's behalf.  Petitioner says that his trial counsel failed to interview other potential witnesses who would or could have testified that the victim did not reside in his residence when the alleged crimes occurred.  According to Petitioner, the potential witnesses included the complainant's aunt (Ebony Gill) and her husband and a Ms. Green, all of whom who resided in the home for at least part of the time that the complainant lived with Petitioner.  The Michigan Court of Appeals concluded that trial counsel's decisions were within the protected realm of trial strategy.  The Court agrees.

Although "[t]he failure to call favorable witnesses can amount to ineffective assistance where it results in prejudice to the defense," Pillette v. Berghuis, 408 F.

App'x 873, 884 (6th Cir. 2010), "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." Strickland, 466 U.S. at 690. Defense counsel stated on the second day of trial that he talked to some of the potential witnesses and that he had determined it was not appropriate to call any of them, except Leandrew Jefferson. Petitioner then stated that he understood defense counsel's reasons and that he agreed with counsel's decision not to call additional witnesses. (Trial Tr. Vol. II, 119-20, Dec. 4, 2009.)

Here, Petitioner not only waived his right to call additional witnesses, he has not submitted any affidavits demonstrating that additional witnesses were willing and able to testify that the complainant did not live with him during the time in question (July or August of 2007 to early March of 2008). It also appears that Ms. Gill and her husband would not have been able to say whether the complainant lived with Petitioner during the relevant time. The complainant testified that Ms. Gill and her husband sometimes stayed overnight at the Floyd home, but that she did not think they lived there. (Trial Tr. Vol. I, 242-43, Dec. 3, 2009.) Petitioner's own wife testified that Ms. Gill moved out of state and then moved back in March 2008. (Trial Tr. Vol. II, 65-66, Dec. 4, 2009.)

In sum, it was not objectively unreasonable for the Court of Appeals to conclude that trial counsel's decision not to call additional witnesses was a matter of sound trial strategy. Petitioner is therefore not entitled to relief on this ground.

### 3. Failure to Bring an Updated Interview Report to Court

Petitioner alleges says that his trial counsel should have brought an updated or supplemental police report to court to impeach the complainant regarding the dates of

the alleged crimes. According to Petitioner, the report indicates that the complainant moved into the Floyd residence in 2008 after the complainant's sixteenth birthday, not in 2007, as the complainant claimed at trial. Because Petitioner was convicted of sexually penetrating a victim under the age of sixteen, he contends that the report would have aided his defense.

The Michigan Court of Appeals concluded that the 2008 date on the supplemental police report appeared to be a typographical error. Petitioner has not rebutted this finding of fact with clear and convincing evidence to the contrary. And because the report could have corroborated the complainant's version of events, trial counsel's failure to produce the report did not constitute deficient performance. Petitioner is not entitled to relief on this ground.

#### 4. Failure to Bring Medical Records to Court

Petitioner further says that trial counsel should have brought his medical records to court to show that he had medical problems, including seizures, which resulted in him receiving social security disability payments, and which made it unlikely that he committed or could have committed the charged offenses. Petitioner argues that, in light of his physical infirmities, his inability to exert himself physically, and the unpredictability of seizures, he could not have restrained the 200-pound victim, removed her clothes, or committed the charged crimes. The Michigan Court of Appeals concluded that Petitioner failed to establish how his medical records could have supported his theory of the case—that he was the victim of false allegations.

Here, trial counsel notified the jury during jury selection that Petitioner was prone to having seizures which lasted a few minutes (Trial Tr. Vol. I, 15, Dec. 3, 2009), and Petitioner had at least one seizure during trial. (Trial Tr. Vol. II, 62-63, Dec. 4, 2009.) So, the jury could have seen for themselves the unpredictability and effect of the seizures on Petitioner. Petitioner's wife, moreover, testified that Petitioner was not a strong man, that doctors had restricted him from lifting anything over twenty pounds, and that his seizures lasted about two minutes. (Trial Tr. Vol. II, 63, 80-81, Dec. 4, 2009.) Thus, Petitioner's medical problems were made known to the jury despite the absence of medical reports.

Furthermore, although the complainant testified that Petitioner overpowered her, the prosecutor's theory was that Petitioner exploited the complainant's vulnerabilities, not that he used force to engage in sex with her.[1] Because the prosecution's case was not based on the a theory of force, trial counsel's failure to introduce medical records showing that Petitioner was physically infirm did not amount to deficient performance and did not prejudice the defense. The Michigan Court of Appeals' similar conclusion was not unreasonable. Petitioner is not entitled to relief on this ground.

### 5. Advice Not to Testify

Petitioner also says that trial counsel advised him not to testify because the prosecutor could use his twenty-year-old felony drug conviction to impeach him. The Michigan Court of Appeals rejected this claim on the ground that Petitioner waived any

---

[1] The complainant was legally blind, younger than Petitioner, and a relative of Petitioner. She had only an eighth grade education, and it appears from the record that she and her mother had no permanent home of their own at the time.

error by knowingly and voluntarily choosing not to testify after receiving advice from counsel.

Petitioner had a constitutional right to testify in his own defense, Rock v. Arkansas, 483 U.S. 44, 49 (1987), but the record supports the state court's finding that he knowingly and voluntarily chose not to testify. Before jury selection, Petitioner acknowledged on the record that he and his attorney had discussed the right to testify several times. Petitioner further acknowledged that, on the advice of counsel, he had decided to allow trial counsel to tell the jury that he might or might not testify. Defense counsel stated that he was not aware of any prior convictions, and the prosecutor agreed not to bring up anything unless Petitioner opened the door to the evidence. At the trial court's suggestion, Petitioner agreed to discuss the matter again after the prosecution rested its case. (Trial Tr. Vol. I, 3-6, Dec. 3, 2009.)

Before the last defense witness testified on the second day of trial, Petitioner acknowledged on the record that he and trial counsel had discussed the issue once again and that, after talking with his wife and trial counsel, he had agreed not to testify even though he knew he had a right to testify. He stated that no one had forced him to make that decision and that it was his own decision. (Trial Tr. Vol. II, 119, Dec. 4, 2009.)

Although Petitioner contends that he relied on trial counsel's erroneous advice about impeachment with a prior conviction, trial counsel stated that he was not aware of any prior convictions. Furthermore, "[a] defendant who wants to testify can reject defense counsel's advice to the contrary by insisting on testifying, communicating with

11

the trial court, or discharging counsel." United States v. Webber, 208 F.3d 545, 551 (6th Cir. 1999) (citing United States v. Joelson, 7 F.3d 174, 177 (9th Cir. 1993)).

Petitioner took none of these actions. He did not insist on testifying, inform the trial court that he disagreed with his attorney, or ask for substitution of counsel. And, according to him, the advice not to testify in this case was tactical because his trial counsel was concerned about the introduction of evidence concerning a prior conviction. In light of the tactical decision not to have Petitioner testify, his assent in the decision is presumed. Webber, 208 F.3d at 551.

Even if trial counsel was mistaken and his performance was deficient, Petitioner has not explained what he would have said if he had testified. Therefore, the allegedly deficient performance did not prejudice his defense. The Michigan Court of Appeals was not unreasonable in concluding the same. Petitioner is not entitled to relief on this ground.

### 6. Failure to Consult or Use an Expert Witness and Put Forth a Viable Defense

In his final allegation of ineffective assistance of counsel, Petitioner says that trial counsel failed to put forth a viable defense and failed to consult or use an expert witness to explain adolescent behavior and unfounded claims of sexual abuse. The contention that trial counsel failed to put forth a viable defense is belied by the record. To his credit, trial counsel argued to the jury that the complainant's allegations were inconsistent and untruthful and that she was not living in the Floyd home at the time of the alleged crimes. (Trial Tr. Vol. I, 165-66, Dec. 3, 2009.) Additionally, as the

12

Michigan Court of Appeals recognized, defense counsel "competently cross-examined the prosecution's witnesses, presented witnesses who called into question the victim's truthfulness, and presented evidence that the victim—contrary to her testimony—did not live with defendant until she was 16 years old." Floyd, 2011 WL 4375096, at *2.

Indeed, trial counsel elicited the complainant's admission that she lied sometimes (id. at 267), that she did not resist Petitioner the first time he penetrated her (id. at 258), that she never screamed when the sexual incidents occurred (id. at 266), that she initially did not tell anyone except her cousin about the abuse (id. at 261), and that she lied to the police when she told them she had mentioned the abuse to some of her friends (id. at 261-62). Trial counsel also elicited an admission from the complainant's mother that the complainant sometimes lied and that the mother once wrote a letter to the complainant stating, "You turn everyone against me with your lies." (Trial Tr. Vol. II, 40-42, Dec. 4, 2009.) One of the defense witnesses was the complainant's grandmother, who testified that the complainant was not a truthful person. (Id. at 58.) The Court agrees with the Michigan Court of Appeals that there is no merit in Petitioner's claim that his trial attorney failed to put forth a viable defense.

As for the failure to consult or present a defense expert, there was no scientific evidence or expert testimony to rebut and no evidence suggesting that the complainant had a motive to falsely accuse Petitioner. Trial counsel could have reasonably concluded that an expert witness was not necessary. Therefore, as the Michigan Court of Appeals also concluded, trial counsel was not ineffective for failing to consult or use a defense expert

### 7.  Summary

For the reasons given above, the Michigan Court of Appeals' rejection of Petitioner's claims about his trial counsel was not contrary to, or an unreasonable application of, Strickland.  The Court therefore declines to grant relief on Petitioner's ineffective-assistance-of-counsel claim.

### B.  The Jury's Verdict

In his second claim, Petitioner argues that the jury's verdict was against the great weight of the evidence.  A "weight-of-the-evidence argument is a state-law argument," and "a federal court is only allowed to review issues of federal law in a habeas proceeding."  Nash v. Eberlin, 258 F. App'x 761, 764 n.4 (6th Cir. 2007).  Petitioner concedes as much in his reply to Respondent's answer to the habeas petition.

Although Petitioner also argues that the jury's verdict violated his constitutional right to due process, he concedes that it would be inappropriate to pursue the theory that the evidence was legally insufficient, because it was a borderline case.  Petitioner also abandoned his due process argument when he argued in his reply that his only disagreement with Respondent pertains to the issue of trial counsel's representation and his Sixth Amendment claim about his sentence.  Relief is not warranted on this claim.

### C.  The Sentence

Petitioner's third claim challenges his sentence.  On direct appeal, Petitioner argued that his sentencing guidelines were inaccurately scored.  Petitioner challenged his score of twenty-five points for prior record variable 1 (high severity felony conviction)

and his score of ten points each for offense variable 4 (psychological injury to the victim) and offense variable 10 (exploitation of a victim's vulnerability). The Michigan Court of Appeals rejected this claim.

Petitioner concedes that his claim about the sentencing guidelines is not cognizable on habeas review. See Howard v. White, 76 F. App'x 52, 53 (6th Cir. 2003) (explaining that "[a] state court's alleged misinterpretation of state sentencing guidelines . . . is a matter of state concern only" and that a federal court may not grant habeas corpus relief on the basis of errors in state law). Petitioner has therefore abandoned his sentencing-guidelines claim.

Petitioner also raises a constitutional challenge to his sentence, contending that his sentence was increased on the basis of facts that he did not admit and that were not proved to the jury beyond a reasonable doubt. Petitioner says that, under correctly scored sentencing guidelines, his minimum sentence would be reduced from a range of 126 to 262 months to a range of 81 to 168 months or, at worst, 108 to 180 months.

Petitioner's claim is based on Apprendi v. New Jersey, 530 U.S. 466 (2000), and Blakely v. Washington, 542 U.S. 296 (2004). In Apprendi, the Supreme Court held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Apprendi, 530 U.S. at 490. In Blakely, the Supreme Court stated "that the 'statutory maximum' for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." Blakely, 542 U.S. at 303 (emphasis omitted). The

Federal Court of Appeals for the Sixth Circuit ruled in Chontos v. Berghuis, 585 F.3d 1000 (6th Cir. 2009), that a Michigan prisoner's minimum sentence survived Sixth Amendment scrutiny because "Harris v. United States [536 U.S. 545 (2002)] tells us that Apprendi's rule does not apply to judicial factfinding that increases a minimum sentence so long as the sentence does not exceed the applicable statutory maximum." Id. at 1002.  And in Montes v. Trombley, 599 F.3d 490, 496-97 (6th Cir. 2010), the Sixth Circuit stated that Michigan has an indeterminate sentencing scheme, which does not violate a defendant's right to due process or right to a jury trial.

Chontos and Montes, however, were decided before the Supreme Court's decision in Alleyne v. United States, 133 S. Ct. 2151 (2013), which overruled Harris and held:

> Any fact that, by law, increases the penalty for a crime is an "element" that must be submitted to the jury and found beyond a reasonable doubt. Mandatory minimum sentences increase the penalty for a crime.  It follows, then, that any fact that increases the mandatory minimum is an "element" that must be submitted to the jury.

Id. at 2155 (internal citation omitted).  The Michigan Supreme Court, moreover, recently held that Michigan has a determinate sentencing scheme and that the Apprendi rule, as extended by Alleyne, applies to Michigan's sentencing guidelines and renders them constitutionally deficient. People v. Lockridge, __ Mich. __, 2015 WL 4562293 (Mich. July 29, 2015).

But Alleyne was decided was decided after Petitioner was sentenced and after his convictions became final.  It was not "clearly established Federal law" under 28 U.S.C. § 2254(d)(1) at the time of his sentencing in 2012.  In addition, the Sixth Circuit

has held "that Alleyne does not apply retroactively to cases on collateral review." In re Mazzio, 756 F.3d 487, 491 (6th Cir. 2014). Therefore, even if the Court were to conclude that Petitioner's sentence violates the Sixth Amendment as interpreted in Alleyne, he is not entitled to habeas corpus relief. Petitioner is not entitled to relief on this claim.

### D. The Tether

In his fourth and final habeas claim, Petitioner says that the trial court erred by sentencing him to lifetime monitoring with an electronic tether. Petitioner correctly points out that the statutory provision allowing for lifetime electronic monitoring applies only when the victim is under thirteen years of age, see Mich. Comp. Laws § 750.520n(1), and, in this case the complainant was at least fifteen years old when the crimes occurred. The Michigan Court of Appeals, however, agreed with Petitioner on direct appeal and vacated the trial court's judgment to the extent that it subjected Petitioner to lifetime electronic monitoring. On remand, the trial court amended the judgment of sentence to remove the lifetime tether condition. See Amended Judgment of Sentence in People v. Floyd, No. 2009-228234-FC (Oakland County Cir. Ct. Feb. 8, 2010), ECF No. 11-10. Petitioner's fourth claim therefore is moot.

### V. Conclusion

For the reasons stated above, the decision of the Michigan Court of Appeals was not contrary to Supreme Court precedent, an unreasonable application of Supreme Court precedent, or an unreasonable determination of the facts. The state court's

decision also was not "so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement." Harrington, 562 U.S. at 103.

Accordingly, the petition for a writ of habeas corpus is **DENIED**. This case is **DISMISSED**.

### VI. Certificate of Appealability

"[A] prisoner seeking postconviction relief under 28 U.S.C. § 2254 has no automatic right to appeal a district court's denial or dismissal of the petition. Instead, [the] petitioner must first seek and obtain a [certificate of appealability.]" Miller-El v. Cockrell, 537 U.S. 322, 327 (2003). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller El, 537 U.S. at 327.

Reasonable jurists would not disagree with the Court's resolution of Petitioner's constitutional claims, nor conclude that the issues deserve encouragement to proceed further. The Court therefore DENIES a certificate of appealability.

SO ORDERED.

                                        s/Avern Cohn
                                        AVERN COHN
                                        UNITED STATES DISTRICT JUDGE

Dated: 8/14/2015
      Detroit, Michigan